```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF SOUTH CAROLINA
                      CHARLESTON DIVISION
                          IN ADMIRALTY

Dhevatara Beach Seychelles,  )
Ltd.,                        )
                             )
        Plaintiff,           )
                             )
vs.                          ) CIVIL ACTION 2:09-2979-DCN
                             )
Bertram Yacht, Inc. and      )
MarineMax, Inc.,             )
                             )
        Defendants.          )
_____)
```

PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Dhevatara Beach Seychelles, Ltd., Plaintiff in the above captioned action, and, complaining of Defendants, shows this Honorable Court as follows:

1. This is a civil admiralty action asserting maritime claims for breach of maritime contracts and bailment duties, for maritime torts, for breach of the *Magnuson-Moss Act*, for breach of the warranty of workmanlike performance, and for other maritime claims, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiffs invoke the admiralty jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333(1).

3. Plaintiff Dhevatara Beach Seychelles, Ltd. is a business corporation formed under and existing by virtue of the laws of the Republic of Seychelles.

4. On or about October, 2009 Plaintiff became the prospective purchaser, purchaser, equitable owner, or

legal owner of the 2006 Bertram 63' Sports Fishing vessel ABSOLUTELY (HIN: BERZ5020D506)("vessel").

5. On information and belief, Defendant Bertram Yacht, Inc. ("Bertram") is a foreign business corporation organized and existing by virtue of the laws of the state of Delaware, with a principal place of business at 3663 N.W. 21st Street, Miami, Florida 33142, and has registered as its agent Robert Allen Law, 1441 Brickell Avenue, Suite 1400, Miami, FL 33131.

6. On information and belief, Defendant MarineMax, Inc. ("MarineMax") is a business corporation organized and existing by virtue of the laws of the state of Delaware, maintains a principal place of business at Clearwater, Florida, operates one or more retail locations in South Carolina, and has registered as its agent Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201.

7. On information and belief, with regard to the transactions set forth herein, Defendant MarineMax, Inc. operated by and through MarineMax Surfside 3, and/or MarineMax International, LLC, and/or MarineMax Northeast, LLC, and/or MarineMax East, Inc., and/or MarineMax Huntington, and/or other MarineMax entities unknown to Plaintiff at this time.

8. On information and belief, on or about 2005, Defendant Bertram designed, manufactured, and delivered the vessel for sale in interstate or foreign commerce as a 2006 model yacht.

9. On or about October, 2009, Plaintiff contracted with MarineMax to purchase the vessel for cash in brand new condition for $1,375,000.00, delivered at West Palm Beach, Florida.

2

10. Under the terms of the contract MarineMax was to deliver the vessel from Lindenhurst, NY to West Palm Beach, Florida using its full time employee, Capt. Jason Milius, as the delivery captain.
11. On or about 0930 hours on November 6, 2009, one or more parts of the vessel suffered catastrophic failure causing loss of the vessel approximately 20 miles off the coast of South Carolina.
12. At all times material, the vessel was a vessel in navigation upon the waters of the United States and near offshore waters of the Atlantic Ocean.
13. At all times material since her sinking on November 6, 2009, the vessel is a wreck at rest on the floor of the Atlantic Ocean at the approximate location of 33-24.181N  078-33.490W ("wreck").

<u>FOR A FIRST CAUSE OF ACTION</u>
(Breach of Express Warranty By Bertram)

14. Plaintiff repeats the above allegations as if set forth herein verbatim.
15. On or about 2005, Bertram designed, manufactured, and sold the vessel as a 2006 model vessel for use as an offshore sport fishing boat.
16. On information and belief, Defendant Bertram gave an express warranty covering said vessel.
17. On information and belief, Plaintiff fully complied with the terms and conditions of the said express warranty.
18. On information and belief, Defendant Bertram materially breached its express warranty.
19. As a direct and proximate result of Defendant Bertram's said material breaches of its said express warranty, Plaintiff has suffered diminution in value

3

of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.

FOR A SECOND CAUSE OF ACTION
(Breach of Implied Warranty By Bertram and MarineMax)

20. Plaintiff repeats the above allegations as if set forth herein verbatim.
21. On or about 2005, Bertram designed, manufactured, and sold the vessel as a 2006 model vessel for use as an offshore sport fishing boat.
22. On or about October, 2009, MarineMax contracted to sell Plaintiff the vessel for use as an offshore fishing boat.
23. Plaintiff timely paid cash for the vessel and fully performed under the contract.
24. Said contract implied a warranty that the vessel would be merchantable and fit for the intended use as an offshore fishing boat.
25. The defective condition of the vessel as sold by Defendants materially breached the said implied warranties.
26. As a direct and proximate result of Defendants' material breaches of the implied warranties, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal

property loss, and suffered other consequential damages as may be proved upon the trial of this action.

### FOR A THIRD CAUSE OF ACTION
(Strict Products Liability Against Bertram and MarineMax)

27. Plaintiff repeatS the above allegations as if set forth herein verbatim.
28. On information and belief, one or more component parts of the vessel delaminated, failed and caused loss of the vessel.
29. On information and belief, the components which delaminated and failed were located in the forward bow of the vessel ("components").
30. On information and belief, the delamination and failure of these components were caused by design and/or manufacturing defects in said components ("defective condition"), which were unreasonably dangerous to the consumer or user or his property.
31. On information and belief, at all material times, Bertram was and is engaged in the business of selling such vessels and such components.
32. On information and belief, Bertram sold the vessel with the defective components installed.
33. On information and belief, at all material times, MarineMax was and is engaged in the business of selling or reselling such vessels and such components.
34. MarineMax sold the vessel with the defective components still installed in or about October, 2009.
35. On information and belief, the defective components reached Plaintiff without substantial change in the

defective condition in which they were sold by Defendants.

36. On information and belief Defendants are strictly liable to Plaintiff for all personal injury and property damage resulting from said defective condition and the delamination and failure of said components.

37. As a direct and proximate result of Defendants' sales of the vessel with defective components installed, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.

FOR A FOURTH CAUSE OF ACTION
(*Magnuson-Moss Act* Against Bertram and MarineMax)

38. Plaintiff repeats the above allegations as if set forth herein verbatim.
39. The vessel was a consumer product.
40. Plaintiff was a consumer with regard to the vessel.
41. After the said casualty, the consumer product was a total loss.
42. Plaintiff gave Defendants a full and fair opportunity to make good on their express and implied warranties, by providing Plaintiff with a replacement vessel.
43. Defendants failed and refused to honor said warranties and failed and refused to provide Plaintiff with a replacement vessel.

44. Defendants violated the *Magnuson-Moss Act*, 15 U.S.C. § 2301 *et seq.,* by breaching in material respects implied and express warranties regarding the vessel.
45. The *Magnuson-Moss Act* precludes sellers who have given an express warranty from attempting to disclaim implied warranties.
46. Defendants gave one or more express warranties.
47. Defendants have attempted to disclaim the implied warranties in violation of the *Magnuson-Moss Act*.
48. As a direct and proximate result of Defendants' said violations, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.
49. As a direct and proximate result of Defendants' said violations, and in accordance with 15 U.S.C. §2310(d), Plaintiff is entitled to attorneys' fees and costs of this action, and prejudgment interest at the legal rate, in amounts as set forth herein.
50. As a direct and proximate result of Defendants' said violations, Plaintiffs are entitled to additional or alternative relief as provided in said *Magnuson-Moss Act.*

<u>FOR A FIFTH CAUSE OF ACTION</u>
(Breach of Maritime Contract Against MarineMax)

51. Plaintiff repeats the above allegations as if set forth herein verbatim.

52. On or about October, 2009, MarineMax entered into a binding contract to sell Plaintiff the vessel for use as an offshore fishing boat.
53. Plaintiff timely paid cash for said vessel and fully performed under the contract.
54. An implied term of the contract was that the vessel to be sold would be merchantable and fit for the intended use as an offshore fishing boat.
55. Defendants sold the vessel to Plaintiff in defective condition.
56. On said date, MarineMax knew or should have known that the vessel sold to Plaintiff was unmerchantable and was unfit for use as an offshore fishing boat.
57. As a direct and proximate result, the vessel was and is unmerchantable, was and is unfit for the intended use as an offshore fishing vessel, and was and is noncompliant with marine safety standards.
58. As a direct and proximate result of MarineMax's material breachs of contract, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.

<u>FOR A SIXTH CAUSE OF ACTION</u>
(Breach of Maritime Contract Against MarineMax)

59. Plaintiff repeats the above allegations as if set forth herein verbatim.

60. A material term of MarineMax's contract of sale for the vessel, provided that MarineMax would deliver the vessel via the navigable waters of the United States and/or the Atlantic Ocean to Plaintiff's agents in West Palm Beach, Florida for ocean carriage to the Republic of Seychelles.
61. MarineMax materially breached said contract by failing to deliver the vessel to West Palm Beach.
62. As a direct and proximate result of MarineMax's material breach of contract, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.

<u>FOR A SEVENTH CAUSE OF ACTION</u>
(Breach of Bailment Against MarineMax)

63. Plaintiff repeats the above allegations as if set forth herein verbatim.
64. In the alternative, Plaintiff completed the purchase of the vessel in New York and took delivery of the vessel at or near Lindenhurst, NY.
65. After purchasing vessel and taking delivery of same, Plaintiff entered into a bailment for mutual benefit with MarineMax.
66. Plaintiff turned the vessel over to MarineMax in good order and condition at or near Lindenhurst, NY for transportation to West Palm Beach, Florida.
67. MarineMax failed to redeliver the vessel to Plaintiff or Plaintiff's agents at West Palm Beach.

68. On the contrary, MarineMax allowed the vessel to sink and become a total loss while in MarineMax's exclusive care, custody, and control.

69. As a direct and proximate result of MarineMax's material breach of its bailment duties, Plaintiff suffered diminution in value of the vessel of approximately $1,600,000.00, incurred $81,000.00 ocean freight charges, incurred approximately $119,000.00 environmental clean up and wreck removal costs, suffered approximately $61,000.00 personal property loss, and suffered other consequential damages as may be proved upon the trial of this action.

WHEREFORE, by reason of the foregoing, Plaintiff prays that this Honorable Court cite Defendants to answer the above matters, that judgment be rendered for Plaintiff and against Defendants, that Plaintiff be fully compensated and awarded actual damages in an amount not less than $1,861,000.00, including consequential and special damages with prejudgment interest at the legal rate of 8.75%, plus costs of the action, treble damages, and attorney's fees, and that a suitable additional award of punitive damages be assessed against Defendants, that the subject contract of sale be recinded, that Plaintiff be given every equitable remedy appropriate, and that this Honorable Court grant such other and/or further relief as may be proven herein or that justice may require.

```
                    RESPECTFULLY SUBMITTED:

                    JOHN HUGHES COOPER, P.C.

                    By: /s John Hughes Cooper__
                    JOHN HUGHES COOPER, ESQUIRE
                        Federal Court ID 298
                        South Carolina Bar 1387
                        State Bar of Georgia 185986
                    JOHN TOWNSEND COOPER, ESQUIRE
                        Federal Court ID 10172
                        South Carolina Bar 76087
                    1808 Middle Street
                    Post Office Box 395
                    Sullivan's Island, SC 29482
                    843-883-9099; fax 843-883-9335
                    shiplaw@jhcooper.com

               and
                    CAIN DENNY, ESQUIRE
                    CAIN DENNY, P.A.
                        Federal Court ID 7383
                        South Carolina Bar 13590
                    P.O. Box 1205
                    Charleston, S.C. 29402
                    843-965-5400

                    ATTORNEYS FOR PLAINTIFF,
                    DHEVATARA BEACH SEYCHELLES, LTD.
```

December 23, 2009
Sullivan's Island, South Carolina

CERTIFICATE OF SERVICE

I hereby certify that we served a true copy of the foregoing Plaintiff's First Amended Complaint upon counsel for Defendants on December 23, 2009.

/s/John Hughes Cooper
John Hughes Cooper