IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY

| | | |
|---|---|---|
| Dhevatara Beach Seychelles, Ltd., and Neil Helliwell, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION: 2:09-cv-02979-RMG |
| Bertram Yacht, Inc., MarineMax, Inc., and MarineMax East, Inc., | ) ) ) ) | |
| Defendants. | ) ) ) | |

## Plaintiffs' Pretrial Brief

COME NOW Plaintiffs and, pursuant to Local Rule 26.05, submit the following Pretrial Brief.

**(A) The name of each attorney, district court identification number, and the full name of each firm handling the case.**

John Hughes Cooper, Esquire, Fed. ID No. 298
John Townsend Cooper, Esquire, Fed. ID No. 10172
John Hughes Cooper, P.C.
*Attorneys for Plaintiffs Dhevatara Beach Seychelles, Ltd. and Neil Helliwell*

Cain Denny, Esquire, Fed. ID No. 7383
Cain Denny, P.A.
*Attorney for Plaintiffs Dhevatara Beach Seychelles, Ltd. and Neil Helliwell*

David M. Collins, Esquire, Federal ID No. 223
Womble Carlyle Sandridge & Rice, LLP
*Attorneys for Defendant Bertram Yacht, Inc.*

Rivers T. Jenkins, III, Esquire, Fed. ID No. 5631
Paul F. Tecklenburg, Fed. ID No. 3702
Gary E. English, Esquire, Fed. ID No. 10092
Tecklenburg & Jenkins
*Attorneys for Defendants MarineMax, Inc. and MarineMax East, Inc.*

**(B) A list of any motions still pending.**

No motions pending. Counsel for all parties have met and agreed to stipulate that: (a) causes of action resolved on Summary Judgment will not be tried by consent, (b) objections to parol evidence which would potentially bear upon issues resolved on Summary Judgment will not be waived if not asserted at trial, (c) quantum of any award of attorneys' fees will be handled by post trial motion, if agreement cannot be reached by counsel, and (d) quantum of any award of indemnity on the cross-claims will be handled by post trial motion. Proposed language for the stipulation is being circulated and a signed stipulation is expected before trial.

**(C) A brief and concise statement of the facts upon which each claim or defense is based.**

Bertram Yacht, Inc. designed and manufactured the subject yacht. Bertram issued a written limited warranty on the vessel's hull running to the first retail purchasers, the Plaintiffs. The vessel's hull bonding was dangerously defective, ultimately causing her sinking and total loss in normal seas off the coast of South Carolina.

MarinMax's Boat Captain and Mate, who were transporting the vessel, testified that, without colliding with any object, the vessel hit a wave, her bow fell apart, and she sank. They escaped in a life raft and were rescued by a shrimp boat. The Mate took photographs from the life raft showing green foam cubes floating in the water which were supposed to be encapsulated in resin to bond the vessel's cored hull sides together. Rescuers testified that, other than the vessel's debris, they saw no objects floating in the water. Expert evidence shows that the hull was inadequately supported and bonded.[1]

Bertram has refused to honor its written limited warranty. Plaintiff paid $1,375,000 for the vessel, it was provisionally insured for $1,600,000, and she was valued

---

[1] Expert evidence shows (a) an insufficient number and arrangement of scantlings forward, (b) an insufficient bonding of bulkheads and partitions to the hull sides, deck, and sole, (c) failure to support the hull sides with transverse framing, (d) an insufficient hull side lamination schedule, (e) excessively large unsupported side spans, (f) failure to hold back foam core 3" from sheer and 6" from chine, (g) failure to trim foam core edges with 45 degree bevel, (h) excessively large voids along the foam core edges, (i) failure to bed foam core in bonding putty, (j) failure to fill gaps between the core, (k) failure to inspect for open grooves, 45 degree edges, and filling of gaps, as required, (l) failure to use bonding putty to secure the core to the outer laminate skin, and (m) insufficient sanding and solvent wiping of laminates.

just prior to the sale for $2,100,000. Over $61,000 of equipment was lost. Plaintiffs paid $45,000 to resolve non-cancelable ocean freight charges. As a result of the sinking, Plaintiff incurred over $119,000 in environmental cleanup costs. The Magnuson-Moss Act provides for attorneys' fees for Bertram's breach of its written limited warranty.

MarineMax, Inc. and MarineMax East, Inc. ("collectively "MarineMax") contracted to sell the vessel to Plaintiffs. During negotiations, MarineMax represented in writing via e-mail that the subject vessel was, "like new," "not used or abused" and "well maintained." MarineMax failed to disclose that (1) during an inspection, the vessel's bulkhead to hullside tabbing was pulling away from her bulkheads in numerous places; (2) the vessel's keel crushed in about half-an-inch along her bow due to lack of structural support when she was lowered onto blocks, something MarineMax's travel-lift operator had never seen in his twenty-seven years at the boatyard; (3) while the vessel was drydocked, a MarineMax fiberglass technician heard the vessel crack "throughout the day" and saw a stress crack appear before his eyes, something he had never seen in his thirty-seven years of fiberglass repair work; (4) a survey of the vessel was conducted (but not disclosed to Plaintiffs) revealing 185 deficient items; (5) Bertram had refused to repurchase the vessel from MarinMax due to her condition; (6) MarineMax switched the oil in the vessel just before Plaintiffs' oil test. The record indicates that MarineMax made partial cosmetic but not complete structural repairs. Under the circumstances MarineMax engaged in a cover up, making material latent defects undiscoverable using normal inspection procedures. Although Plaintiffs conducted a sea trial, marine survey, and engine oil analysis they were unable to discover the latent defects. By giving half-truths and failing to disclose serious potential defects not readily discoverable through reasonable diligence, MarineMax breached its duty of good faith and fair dealing. Plaintiffs seek rescission of the sales contract, or, in the alternative, actual and consequential damages.

**(D) Additional legal authorities upon which each claim or defense is based not listed in the <u>Fed. R. Civ. P. 26(f)</u> report to the Court. _See_ Local Civil <u>Rule 26.03</u>(A)(4).**

Following this Court's Order issued January 3, 2012 (Docket Etnry # 97), Plaintiffs' remaining claims are:[2]

1. Bertram's Breach of its Written Limited Warranty.
   a. Although Plaintiffs were not in privity with Bertram, they are entitled to make a claim against a manufacturer's limited warranty. *Shuldman v. DalmerChrysler Copr.*, 768 N.Y.2d 214, 216 (N.Y. App. Div. 2003).
   b. For this claim, Plaintiffs seek actual damages, consequential damages, pre-judgment interest, post-judgment interest. Plaintiffs further seek attorney's fees, costs and expenses under the Magnuson-Moss Warranty Act. 15 U.S.C. § 2310(d).

2. Strict Liability against Bertram.
   a. For this claim, Plaintiffs seek consequential damages other than loss of the vessel itself: $119,000 for environmental clean-up costs, $61,000 for lost equipment, and $45,000 for non-cancelable ocean freight charges.

3. MarineMax's Breach of its Duty of Good Faith and Fair Dealing.
   a. Plaintiffs incorporate herein the legal authority cited by this Court's Order issued January 3, 2012 regarding this cause of action (Docket Entry #97, pp. 6-7).[3]
   b. For this claim, Plaintiffs seek rescission of the purchase agreement, or, in the alternative, actual

---

[2] Plaintiffs briefed the legal issues regarding their dismissed claims in their Memoranda in Opposition to Bertram and MarineMax's Motions for Partial Summary Judgment. (Docket Entries 93 and 94).

[3] Every contract has an implied covenant of good faith and fair dealing. *Cross v. Cross Properties, Inc. v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir. 1989); Restatement (Second) Contracts § 205. Good faith includes honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. N.Y. U.C.C. Law § 2-103(1)(b)(McKinney 2011). Among the limited circumstances in which a seller has a duty to disclose relevant information in a business transaction are situations where the seller has made "a partial or ambiguous statement" that is essentially a half truth or where the seller possesses superior knowledge not readily available to the buyer with reasonable diligence. *Bass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d. Cir. 1993). The Restatement Second of Contracts recognizes the duty to disclose where a buyer is led into a bargain by his ignorance that is essentially "a trap" in which "he would never dream of entering" if he knew the information known by the seller. § 551(d).

and consequential damages, pre-judgment interest, and post-judgment interest.

4. Strict Liability against MarineMax
   a. For this claim, Plaintiffs seek consequential damages other than loss of the vessel itself: $119,000 for environmental clean-up costs, $61,000 for lost equipment, and $45,000 for non-cancelable ocean freight charges.

**(E) Any unusual questions of law concerning admission of evidence or procedure likely to arise in the trial of the case.**

None. The proposed stipulations should eliminate the need for constant objections by Counsel for MarineMax pertaining to issues and claims disposed of by Summary Judgment and pertaining to the parol evidence rule and its bearing on those issues disposed of by Summary Judgment.

**(F) Whether the possibility of a compromise settlement has been discussed and explored with opposing counsel. State specifically whether an offer has been made and the position of each party as to settlement; if no attempt to settle has been made, state the reasons. If nonjury, counsel should not disclose settlement negotiations.**

The mediation conference was unsuccessful. Settlement discussions have continued, but have been unsuccessful.

**(G) The names of the witnesses expected to be called and a summary of their anticipated testimony. Whether the exclusion of a witness or witnesses is requested pursuant to <u>Federal Rule of Evidence 615</u>. If no request is made herein, it shall be deemed waived.**

Vessel's Sinking

Jason Milius (live or by deposition). [4]
    Mr. Milius was MarineMax's delivery captain who was delivering the vessel when she sank in normal seas off the coast of South Carolina. He is expected to testify that, without colliding with any object, the vessel hit a wave, her bow fell apart, and she sank. Mr. Milius and the mate,

---

[4] (Jason Milius Depo. 05:15 – 05:25, 06:05 – 20:03, 23:04 – 32:19, 33:01 – 42:05, 45:06 – 49:02, 49:11 – 52:24, 54:12 – 55:08, 57:05 – 58:06, 62:21 – 65:05, 68:10 – 83:08, 85:12 – 90:23, 107:03 – 116:13, 116:25 – 118:13, 118:23 – 123:14, 123:21 – 143:25, 144:07 – 161:03, 161:18 – 164:19, 166:08 – 183:11, 183:16 – 197:08, 198:10 – 201:05, 201:20 – 22:23, 224:23 – 228:25, 232:11 – 233:20, 235:13 – 237:07, 239:14 – 250:20, 253:12 – 259:08, 261:12 – 264:02, 289:23 – 296:04, 304:24 – 305:14, 307:01-308:08).

Jamie Castatine, escaped on a life raft and were rescued by a shrimp boat. Plaintiffs have made arrangements to bring Capt. Milius to trial.

Jamie Castantine (live or by deposition). [5]
Ms. Castantine was the mate aboard the vessel when she sank. She is expected to testify that the vessel sank in normal seas without colliding with any object. She testified to the authenticity of the photographs she took from the life raft as the vessel sank. Plaintiffs have made arrangements to bring Ms. Castantine to trial.

Craig Hancock (By Deposition)[6]
Mr. Hancock was the Captain of the shrimp boat which rescued Captain Milius and Ms. Castantine when the subject vessel sank. He testified that, other than the debris from the vessel, he saw no objects floating in the water. (27:17 – 27:22).

Joshua White (By Deposition)[7]
Mr. White was a crewmember aboard the shrimp boat which rescued Captain Milius and Ms. Castantine when the subject vessel sank. He testified that he saw no large objects, partially submerged objects, container units, big logs, or anything of that nature floating in the water. (26:01 – 26:11).

## Survey of Vessel's Wreck

Neil Haynes. (To Testify in Person)
Mr. Haynes is a professional vessel surveyor who is expected to testify regarding diving on the vessel's wreck and its condition.

## MarineMax's Knowledge of Vessel Defects

William Ehlers (By Deposition).[8]  Mr. Elhers was Supervisor of Inboard Boats at MarineMax. His deposition testimony will

---

[5]   (Jamie Castantine Depo. 05:16 – 06:03, 06:06 – 11:24, 12:12 – 17:03, 23:04 – 23:22, 27:21 – 33:19, 34:08 – 39:23, 40:13 – 53:03, 55:22 – 58:06).

[6]   (Craig Hancock Depo. 04:22 – 12:17, 13:12 - 16:23, 19:11 – 20:10, 21:10 – 21:16, 25:15 – 27:22, 28:08 – 28:16).

[7]   (Joshua White Depo. Designations: 04:13 – 05:09, 06:02 – 06:22, 07:18 – 12:24, 14:12 – 21:08, 23:16 – 24:14, 26:01 – 26:11)

be offered to show that MarineMax knew that the vessel's fiberglass tabbing was pulling away from its bulkheads. (62:18 – 62:24);(62:18 – 62:22).

William Hacker (By Deposition).[9] Mr. Hacker was a MarineMax boatyard employee. He and Mr. Dupuy gave deposition testimony that, when the subject vessel was lowered onto blocks at the MarineMax boatyard, the blocks caused an indentation of about half-an-inch into the hull of the vessel about eight inches long, something Mr. Hacker had never seen in his twenty-seven years of work at the boatyard (27:19 – 28:02). He reported this incident, and someone from the front office inspected the damage (26:04 – 26:16) and took photos.

Joseph Dupuy (By Deposition).[10]
Mr. Dupuy was a MarineMax boatyard employee. He and Mr. Hacker gave deposition testimony that when the subject vessel was lowered onto blocks at the MarineMax boatyard, the blocks caused an indentation of about half-an-inch into the hull of the vessel (26:09 – 26:24), something he had never seen happen with another boat (28:18 – 28:22). The only option to support the vessel was to move the blocks to a different location on the keel (28:12 – 28:17).

Thomas Bamundo (By Deposition)[11]
Mr. Bamundo was a MarineMax fiberglass technician. He gave deposition testimony that, although he did not recall which boat, a big boat had a dip in the hull, that Mr. Hacker and Mr. Dupuy would know best which boat it was, and that the dip was not repaired by MarinMax. (23:08 – 24:05).

John Livoti (By Deposition).[12]

---

[8] (William Ehlers Depo. 04:06 – 04:13, 05:15 – 23:19, 34:14 – 35:10, 37:15 – 38:04, 45:24 – 46:21, 61:20 – 65:24, 66:17 – 67:09, 68:15 – 69:06, 69:25 – 72:22, 73:05 – 73:21).

[9] (William Hacker Depo. 04:06 – 04:13, 07:20 – 09:03, 09:19 – 10:13, 10:20 – 12:19, 13:04 – 15:08, 17:06 – 19:02, 21:18 – 24:13, 24:21 – 28:17, 40:07 – 40:19).

[10] (Joseph Dupuy Depo. 04:06 – 04:13, 05:17 – 17:12, 17:22 – 29:02, 29:15 – 32:10, 42:03 – 43:03, 44:12 – 47:20, 48:15 – 49:21).

[11] (Thomas Bamundo Depo. 04:07 – 09:24, 23:08 – 24:05).

[12] (John Livoti Depo. 04:05 – 04:12, 04:15 – 07:25, 08:05 – 12:12, 12:23 – 13:19, 13:24 – 14:22, 15:19 – 16:25, 19:11 – 27:02, 27:11 – 29:09,

Mr. Livoti was a Quality Control Inspector for MarineMax. He gave deposition testimony that he saw a persistent trickle of water in the bilge of the vessel coming from forward, and that MarineMax drilled small holes in the subject vessel exploring for water which was thought to be in the bilge of the boat. (11:10 – 12:09). He saw approximately a dozen holes drilled. (13:03 – 13:06).

Stephan DeTurris (By Deposition).[13]

Stephen DeTurris was a fiberglass technician for MarineMax. He testified that he saw a stress crack develop on the subject vessel before his eyes, something he had never seen happen in his thirty-seven years of working at the boatyard. (13:08 – 13:20).


## Vessel's Design

Richard Lamarre (By Deposition)[14]

Mr. Lamarre is Bertram's engineering director. Bertram designated him as its 30(b)(6) witness to testify about the design of the vessel. He has an associate degree in architecture and an undergraduate degree in engineering. He took, but did not complete, a correspondence course in naval architecture through Westlawn. He does not have a naval architecture degree or certificate. (12:9-11). Mr. Lamarre was unable to identify any documents which specified how the bulkheads on the subject vessel were supposed to be attached to the sides (38:10 -38:19, 107:22 – 111:15). He was not aware of what calculations regarding the vessel's strength had been done (72:12 – 73:16) and did not know which naval architect designed the vessel (75:09 – 75:20). He did not know whether any "finite element analysis" was done for the scantling structure of the vessel. He testified that Bertram builds to a RINA standard to meet certain strength criteria. (42:21 –

---

29:13 – 30:02, 31:06 – 32:25, 34:19 – 35:09, 37:07 – 38:24, 43:02 – 44:14, 47:23 – 48:23, 50:14 – 52:02).

[13] (Stephan DeTurris Depo. 04:06 – 04:13, 05:02 – 05:20, 08:11 – 08:17, 09:16 – 11:17, 13:08 – 13:20, 14:09 – 16:07, 17:02 – 19:17, 21:17 – 28:18, 37:09 – 39:08, 39:15 – 41:10, 51:16 – 55:06).

[14] (Richard Lamarre Depo. 04:02 – 04:17, 05:08 – 70:03, 72:04 – 73:16, 75:09 – 75:25, 76:10 – 78:20, 79:21 – 91:05, 95:06 – 100:04, 101:17 – 102:08, 103:21 – 110:16, 112:06 – 114:01, 116:13 – 133:08, 139:04 – 145:04, 154:19 – 165:05, 169:15 – 172:22, 174:22 – 176:15, 181:17 – 181:20, 183:02 – 185:09.

43:02), and that, in bonding the bulkheads to the deck structure, when wooden cleating is used, it should be used every three inches and when aluminum cleating is used, it should be used every six inches. (46:15 - 46:20). Mr. Lamarre testified that if blocking of the vessel is adhered to as in the drawing Bertram provides, then the vessel should not suffer a keel crush as described by MarineMax boatyard employees. (67:08 - 67:25). Mr. Lamarre admitted that the ABSOLUTELY was not manufactured by vacuum bagging. Viewing photographs of samples recovered from the wreck of the vessel (Exhibits 234, 235, and 236) he agreed that that area of the boat was not manufactured as he designed it (169:15-23) as there was no putty or resin in the kerfs of the foam core material.

## MarineMax's Failure to Repair Structural Defects

Donald Flippen (By Deposition)[15]

Mr. Flippen is an employee of Ferretti Group North America, which has an owns Bertram. Bertram designated him to testify as its 30(b)(6) witness about warranty claims for the subject vessel. Mr. Flippen was Director of Customer Support for Bertram until 2010. In that position, he handled warranty claims for Bertram made both by dealers and retail purchasers. Mr. Flippen was not aware of any warranty claim for the subject vessel by MarineMax regarding the keel being partially crushed (80:03 - 80:06),"numerous bulkhead tabbing pulling away" as described by William Elhers (138:20 - 139:05), a persistent trickle of water through the bilge forwards (80:19 - 80:23), or for drilling holes in the vessel (80:24 - 81:01). Mr. Flippen testified that a keel crush as described would be a structural, not a cosmetic issue. (147:07 - 147:14).

## Bertram's Warranty

---

[15] (Donald Flippen Depo. 04:07 - 04:09, 06:11 - 07:04, 08:24 - 09:25, 10:15 - 10:25, 13:04 - 13:20, 16:03 - 17:03, 17:13 - 18:16, 20:21 - 22:23, 24:23 - 34:09, 35:01 - 39:08, 40:17 - 42:19, 43:11 - 52:24, 54:04 - 56:14, 60:16 - 60:23, 62:05 - 62:24, 67:19 - 76:01, 77:01 - 78:04, 79:16 - 81:01, 83:18 - 84:18, 85:12 - 94:06, 120:25 - 122:04, 123:16 - 124:18, 136:11 - 140:06, 145:18 - 148:07, 152:16 - 153:05).

James Henderson (By Deposition)[16]

 Mr. Henderson is the Chief Marketing Officer for North
 America for the Ferretti Group, which has an ownership
 interest in Bertram.  He had knowledge of advertising of
 the Bertram product line in 2009, when Plaintiffs were
 selecting a vessel to purchase.  He testified in deposition
 that documents labeled Bertram 1517 through 1545 were the
 adds for Bertram vessels placed in publications worldwide
 in 2009 (14:23 - 16:08), that most of the adds have an
 indication on them of the factory warranty (17:19 - 17:25),
 and that this was a feature which makes people want to buy
 a Bertram (17:01 - 17:06).

Bruce Garbaghi (By Deposition)[17]

 Mr. Garbaghi is an employee of RINA USA, Inc., which
 provides a "CE" certification for Bertram yachts intended
 to be sold in the European community.  Mr. Garabaghi
 provided copies of the design drawings certified by RINA
 (Exhibits 153(11) and 153(13)).  These drawings differ in
 material respects from the construction drawings provided
 by Bertram (Exhibit 99).  In particular, Exhibit 153(11)
 requires that the vessel be manufactured using a vacuum
 bagging.

### MarineMax's Delivery of the Vessel

Justine Stellin (By Deposition)[18]

 Ms. Stellin was a business manager at MarineMax.  She gave
 deposition testimony that the contract price for the
 subject vessel was $1,375,000 and that MarineMax received
 funds in that amount.  (17:02 - 17:19).

Julia Ospedale (By Deposition)[19]

---

[16]  (James Henderson Depo. 04:02 - 04:05, 05:02 - 05:20, 09:05 - 15:24,
 16:19 - 18:02, 24:09 - 26:08).

[17]  (Bruce Garbaghi Depo. 04:07 - 04:23, 06:17 - 12:03, 18:03 - 36:10,
 37:12 - 39:21, 42:09 - 44:14, 47:19 - 49:06, 52:13 - 52:25, 55:09 -
 56:02, 59:06 - 60:01, 67:04 - 68:21, 69:09 - 69:22, 70:25 - 72:11,
 73:08 - 77:17, 82:10 - 83:15, 87:11 - 88:08, 103:24 - 105:04, 107:10 -
 109:23, 121:01 - 123:15, 128:07 - 129:18, 135:04 - 135:18).

[18]  (Justin Stelline Depo. 04:06 - 04:13, 06:05 - 06:21, 09:22 - 09:24,
 13:23 - 17:19, 19:13 - 21:14, 22:10 - 23:06, 23:22 - 24:08, 25:15 -
 26:10).

[19]  (Julia Ospedale Depo. 04:06 - 04:14, 06:14 - 06:25, 07:11 - 09:09,
 10:07 - 10:19 , 33:25 - 36:05, 36:19 - 39:11, 45:20 - 47:07, 50:13 -

Julia Opsedale was a Service Advisor for MarineMax. She gave deposition testimony that she arranged transportation of the subject vessel for the voyage on which it sank. (13:17 - 13:20). She hired the boat captain for MarineMax. (21:20 - 21:24) and chose him from a MarineMax certified captain's list (22:19 - 22:24). The vessel left the MarineMax facility in Lindenhurst, New York headed to West Palm Beach, Florida, but sank off the coast of South Carolina.

### Stephen Owen (By Deposition)[20]

Mr. Owen is a representative of Plaintiff Dhevatara Beach Seychelles, Ltd. He communicated with MarineMax for Plaintiffs regarding MarineMax's agreement to transport the vessel. MarineMax arranged the delivery captain. (39:05 - 39:15, 47:19 - 48:02). Plaintiffs paid MarineMax at least $59,000 for equipment in addition to the purchase price. (76:10 - 76:23).

### Michael Kurnides (By Deposition)[21]

Mr. Kurnides testified that he is an unlicensed marine surveyor with 13 years experience. He testified to his marine survey of the ABSOLUTELY, including his inspection of the open visible areas, inspection of the visible bulkhead tabbing, and tapping of the hull below the waterline and as far above it (approximately 18 inches) as he could reach (63:8-19).

Damages

### Michael Winter (By Deposition)[22]

Mr. Winter was the MarineMax Northeast Marina Manager. He testified that he assisted Mr. Helliwell by outfitting the vessel with equipment including fishing tackle, poles, gaffs, a fighting chair, life rafts, and an EPIRB. (37:24

---

54:25, 57:06 - 60:08, 60:16 - 62:25, 65:10 - 68:14, 69:11 - 70:21, 72:11 - 75:09, 129:05 - 133:20).

[20] (Stephen Owen Depo. 04:08 - 04:10, 06:13 - 06:21, 07:12 - 08:22, 09:06 - 11:16, 13:04 - 16:12, 32:17 - 33:02, 35:03 - 36:12, 45:22 - 48:02, 54:13 - 55:24, 58:05 - 59:07, 67:19 - 69:13, 70:16 - 78:03, 90:11 - 91:13).

[21] (Michael Kurnides Depo. 04:02 - 04:05, 05:16 - 05:23, 06:18 - 06:25, 08:22 - 09:04, 10:18 - 10:24, 12:22 - 16:23, 18:13 - 22:08, 24:25 - 28:20, 30:07 - 30:15, 39:02 - 43:20, 46:03 - 48:06, 54:21 - 56:24, 61:17 - 67:05).

[22] (Michael Winter Depo. 04:06 - 04:13, 07:02 - 08:07, 21:17 - 23:22, 24:14 - 27:12, 37:08 - 47:04, 47:20 - 48:02, 49:04 - 50:07, 51:17 - 51:21, 55:05 - 55:12, 89:25 - 92:25).

– 38:18). Mr. Helliwell was charged $37,776.30 for items from Fishin' Mission (44:14 – 44:16), $16,825 for a fighting chair (45:23 – 46:05), and $7,551.68 for a life raft and an EPIRB (46:13 – 46:25). These amounts total more than $61,000.

## Vessel's Defects

### David Jones

David Jones is a naval architect who is expected to testify regarding the defects in the subject vessel, including: (a) an insufficient number and arrangement of scantlings forward, (b) an insufficient bonding of bulkheads and partitions to the hull sides, deck, and sole, (c) failure to support the hull sides with transverse framing, (d) an insufficient hull side lamination schedule, (e) excessively large unsupported side spans, (f) failure to hold back foam core 3" from sheer and 6" from chine, (g) failure to trim foam core edges with 45 degree bevel, (h) excessively large voids along the foam core edges, (i) failure to bed foam core in bonding putty, (j) failure to fill gaps between the core, (k) failure to inspect for open grooves, 45 degree edges, and filling of gaps, as required, (l) failure to use bonding putty to secure the core to the outer laminate skin, (m) insufficient sanding and solvent wiping of laminates, (n) insufficient hull to deck joint, (o) insufficient foam density, (o) improper orientation of the 3408 triaxial fabric, (p) material deviation from laminate schedule, and other defects in design and manufacturing. David Jones will testify that the ABSOLUTELY was not manufactured in accordance with the RINA design drawings (Exhibits 153(11) and 153(13), nor was it manufactured in accordance with the Bertram construction drawings (Exhibit 99). David Jones will testify that the deviations were material and caused the loss of the vessel.

## MarineMax's Breach of its Duty of Good Faith and Fair Dealing

### Todd Nickles (By Deposition)[23]

Mr. Nickles is a friend and business associate of Mr. Helliwell. He inquired of MarineMax about the subject vessel for Mr. Helliwell, received e-mails from MarineMax's Mike Lennon, and forwarded them to Mr. Helliwell (12:03 – 12:09, 24:08 – 24:13). One e-mail stated, "2006 Bertram 630 NEW LISTING – NEVER TITLED" (08:07 – 08:14). Another stated, "Our 0663 is like new and it is not used or abused" (13:12 – 13:24).

---

[23] (Todd Nickles Depo. 04:10 – 05:21, 11:16 – 23:14, 24:08 – 26:11, 37:19 – 38:06, 59:07 – 59:16, 84:14 – 86:01).

<u>Breaches and Damages</u>

Neil Helliwell
Mr. Helliwell is expected to testify to Bertram's refusal to honor its hull warranty, MarineMax's representations about the vessel and failure to disclose its latent defects during and after negotiations, and the quantum of damages.

Plaintiffs also expect to cross examine the following will call witnesses listed by Bertram:
Alton Herndon
Robert Allen, Esquire
Ken Beauregard
Rob McDougal
Robert Taylor
Pablo Longo
Rodney Thomason
Plaintiffs also expect to cross examine the following will call witnesses listed by MarineMax:
Mike Lennon
John Danielecki
John Smith
Robert Lacovara
Robert Schofield

**(H) The damages claimed should be set forth in detail, including, but not necessarily limited to:**

```
$2,100,000 Vessel's Fair Market Value Immediately Prior to Loss[24]
    61,000 Lost equipment (riggings, add-ons, personal property)
   119,000 Environmental Clean-Up Costs
+   45,000 Non-cancelable Ocean Freight Charges
$2,325,000
```

<u>Additional Damages</u>

Attorneys' fees per the Magnuson-Moss Act against Bertram
Pre-Judgment Interest
Post-Judgment Interest

Plaintiff seeks a post-trial determination of these damages.

**(1) Where permanent injuries are claimed, their nature must be described with particularity, and plaintiff's life expectancy must be given. Attach copies of medical reports and doctors' statements where available;**

---

[24]     The vessel's purchase price was $1,375,000.

Not applicable.

**(2) Special damages claimed must be specified in detail. Thus, in personal injury cases, medical, nursing, hospital, and similar expenses should be itemized by giving the names of persons and institutions and the amount paid to or owing each. If property damage is claimed, state the cost of repairs and names of persons making them; or, if incapable of repair, the value of the property immediately before the accident and immediately afterwards;**

Immediately prior to its sinking and total loss, the subject vessel sold for $1,375,000 and its fair market survey valuation was $2,100,000. Over $61,000 worth of equipment was lost in the sinking. As a result of the sinking, Plaintiffs incurred over $119,000 in environmental clean-up costs. Plaintiff incurred $45,000 to resolve non-cancelable ocean freight charges. The Magnuson-Moss Act provides for attorneys' fees for Bertram's breach of its written limited warranty. Plaintiffs seek pre-judgment interest and post-judgment interest.

**(3) If loss of earnings or profits is claimed, state the amount, the manner of computation, the period for which loss is claimed, and the name of employer, if applicable;**

Not applicable.

**(4) In death cases, state the age, employment, rate of earnings, marital status, and life expectancy of deceased; also, the names, ages, and the relationship of the dependents;**

Not applicable.

**(5) The defendant should specify its position concerning damages.**

Not applicable to Plaintiffs.

**(I) Where a contract or a writing is involved:**

**(1) If a written contract or a writing is involved, a copy should be furnished to the Court, and the portions in controversy particularized, with a statement as to the claimed construction thereof, and performance or nonperformance thereof, or obligation in connection therewith;**

Please the following attached Exhibits:

Exhibit 98. Bertram Yacht, Inc. Limited Warranty (U.S.)
This limited warranty runs to Plaintiffs as the first retail purchasers of the subject vessel, but Bertram has refused to honor it.

Exhibit 89. Brokerage Purchase and Sale Agreement

Plaintiffs seek rescission of the Brokerage Purchase and Sale Agreement based on MarineMax's Breach of its Duty of Good Faith and Fair Dealing by stating half-truths while failing to disclose dangerous latent defects. This Brokerage Purchase and Sale Agreement does not disclaim for Bertram, only for MarineMax as Seller and Broker.

**(2) If the contract is oral, its substance should be given; and where there is a dispute concerning its terms, the controverted terms should be specified and the same issues covered as above mentioned as to written contracts.**

Not applicable.

**(J) Where the relief sought is not covered by (H) above or is in addition thereto, state the nature of the relief sought and the reason(s) such relief should or should not be granted.**

Not applicable.

**(K) Counsel's best estimate of the time required for trial.**

4-5 Days.

**(L) Any special matters to which the Court's attention is sought or required.**

Not applicable.

**(M) Any reason why the case cannot be tried at the term for which it is set for trial.**

None.

**(N)** The final list of exhibits intended to be used in the trial of the case with any objections noted. This list shall be served on opposing counsel.

<u>JOINT EXHIBIT LIST</u>

1.  Photo ABSOLUTELY on blocks in MarineMax yard
2.  Photo ABSOLUTELY at dock before casualty
3.  Photo ABSOLUTELY at dock before casualty
4.  Photo transom ABSOLUTELY before casualty
5.  Hull Diagram showing location break in deck
6.  Photo exemplar vessel underway showing location break
7.  Photo ABSOLUTELY before casualty
8.  Photo ABSOLUTELY interior after casualty

```
9.      Photo ABSOLUTELY interior after casualty
10.     Photo ABSOLUTELY life raft after casualty
11.     Photo ABSOLUTELY transom after casualty
12.     Photo ABSOLUTELY after casualty
13.     Photo ABSOLUTELY after casualty
14.     Photo ABSOLUTELY after casualty
15.     Photo ABSOLUTELY after casualty
16.     Photo ABSOLUTELY after casualty
17.     Photo ABSOLUTELY after casualty
18.     Photo bow section from wreck ABSOLUTELY
19.     Photo underwater bow wreck ABSOLUTELY
20.     Photo ABSOLUTELY in yard showing area of holes
21.     Patton Marine Survey report 10/4/08
22.     Michael Kurnides Survey report 8/25/09
23.     Work Order 202044
24.     Work Order 213162
25.     Work Order 207262
26.     Work Order History Report (20pp)
27.     Acceptance of Vessel Addendum #1
28.     Email 8/8/09
29.     MarineMax Vendor Application Form
30.     Email 10/30/09
31.     Handwritten Notes (hearsay in item 6 redacted)
32.     Cellphone photo ABSOLUTELY after casualty
33.     WITHDRAWN
34.     Email 07-28-09
35.     Invoices Fishing tackle, chair, life raft EPIRB
36.     Email 09-18-09
37.     WITHDRAWN
38.     Email 08-17-09
39.     Email 09-01-09
40.     Email 10-30-09
41.     Email 01-27-09 (OBJECTION  -- Defendants object on the
    basis of hearsay and relevance; Plaintiffs assert that the
    exhibit is being offered to show notice to MarineMax and
    not for the truth of the matters asserted)
42.     Work Order 217975
43.     Mister Marine invoice $12,300.49 (3pp)
44.     Job Detail (2pp)
45.     Email 10-06-09
46.     Email 09-16-09
47.     Email 09-16-09
48.     Sevenstar Yacht Transport Insurance Questionaire (3pp)
49.     Email 10-05-09
50.     Email 10-05-09
51.     Email 10-28-09
52.     Email 11-02-09
```

53.    Email 09-24-09
54.    BS; MSO; Sellers Closing Stmt; Brokerage Comm
       Disbursement; Brokerage Purch and Sale Agmt; Wiring Inst;
       Brokerage Purch and Sale Agmt  x2 (22pp)
55.    Brokerage Purch and Sale Agmt signed; Seller's Closing
       Stmt; Buyer's Closing Stmt; Acceptance of Vsl addendum #1;
       MSO; Builders Cert; Receipt wire $1,237,805; Cert
       Nonresidency NY x2; Acceptance of Vsl (15pp)
56.    Wire confirmations $1,237,805 and $137,485 (7pp)
57.    Email 09-16-09
58.    Email 08-16-09
59.    Email 08-24-09
60.    Email 09-14-09
61.    Email 07-22-09
62.    Email 07-22-09
63.    Email 06-09-09
64.    Email 07-22-09
65.    Email 07-31-09
66.    Customer Quote 28009 (3pp)
67.    Email 08-15-09
68.    Email 08-17-09
69.    Email 08-16-09
70.    Email 08-19-09
71.    Receipts Email oil samples
72.    Email oil samples
73.    Photo Bertram
74.    Emails various dates
75.    Emails various dates
76.    Emails and Atlantic Detroit reports (3pp)
77.    Emails various dates
78.    Oil Analysis reports (2pp)
79.    Email 10-05-09
80.    Email 09-09-09
81.    Case 63/20 Operator's Manual (2pp)
82.    Brokerage and Used Program; Brokerage Comm
       Disbursement (2pp)
83.    Email 06-08-09
84.    Brokerage Purch and Sale Agmt (6pp)
85.    Email 08-05-09
86.    Brokerage Purch and Sale Agmt (6pp)
87.    Email 08-12-09
88.    Brokerage Purch and Sale Agmt (6pp)
89.    Brokerage Purch and Sale Agmt w/ Exhibits (9pp) signed
90.    Acceptance of Vessel w/o Addendums
91.    List Warranty Claims
92.    Warranty Claim #12
93.    Warranty Claim #10

94.     Warranty Claim #12
95.     Warranty Service Claim
96.     Warranty Claim #9
97.     Warranty Claim
98.     Bertram Yacht, Inc. Limited Warranty
99.     Hull Lamination Schedule Drawing Bertram 793
100.    CE Product Verification Certificate #DIP06105/XL (2pp)
101.    WITHDRAWN
102.    WITHDRAWN
103.    MarineMax Advertising
104.    EBay Advertising
105.    MarineMax Yacht World Advertising
106.    MarineMax Specs
107.    Bertram Specs (6pp)
108.    Allied Marine Specs (2pp)
109.    High Seas Technology contract (4pp)
110.    List of Surveyors
111.    Kurnides Survey Report (16pp) (Objection; Defendants
        object to opinions regarding value as unreliable and
        lacking a proper foundation. No objection to remainder of
        report.)
112.    WITHDRAWN
113.    Public Statement (OBJECTION; Defendant Bertram objects
        as hearsay and including settlement discussions.)
114.    Bertram Website Warranty Information (3 pp)
115.    WITHDRAWN
116.    Bertram Website Information (27pp)
117.    Email 08-17-09
118.    Email 08-16-09
119.    WITHDRAWN
120.    Handwritten notes
121.    Email 12-06-09 (OBJECTION; Defendants object to item 1
        of Mr. Cooper's email as referencing settlement and
        hearsay.)
122.    WITHDRAWN
123.    MarineMax Work Order
124.    Email 09-08-09
125.    Email 08-01-09
126.    Email 08-18-09
127.    Email 08-19-09
128.    Email 08-14-09
129.    Advertisement
130.    WITHDRAWN
131.    WITHDRAWN
132.    WITHDRAWN
133.     Email 08-18-09
134.     Email 09-12-09

| | |
|---|---|
| 135. | Email 09-15-09 |
| 136. | Email 09-17-09 |
| 137. | Email 09-20-09 |
| 138. | WITHDRAWN (Duplicate of Ex. 48) |
| 139. | Email 09-23-09 |
| 140. | Email 10-02-09 |
| 141. | Email 10-16-09 |
| 142. | Email 10-20-09 |
| 143. | Email 10-23-09 |
| 144. | Email 10-26-09 |
| 145. | Email 11-04-09 |
| 146. | Email 11-06-09 |
| 147. | Email 11-09-09 |
| 148. | 3 and 4 State Room Drawings with notes |
| 149. | Drawing fwd |
| 150. | Drawing fwd |
| 151. | Hull Number 20 File |
| 152. | Modules B and F |
| 153. | Shell Expansion and Hull Construction Drawings |
| 154. | Bertram Construction Drawings |
| 155. | Email 10-16-11 |
| 156. | Bertram 630 Model Certificates |
| 157. | CE Certification for Hull 630-20 |
| 158. | Amended Bertram 630 Model Certificate dated 3/28/06 |
| 159. | Directive 94/25/CE |
| 160. | RINA Guide |
| 161. | WITHDRAWN |
| 162. | WITHDRAWN |
| 163. | Taylor CV |
| 164. | Lamination Schedule |
| 165. | Taylor Bertram Foam Core Density Diagram |
| 166. | Taylor Structural Calculations |
| 167. | Manufacturer Material Properties |
| 168. | Taylor Photos and Diagram of Hull under Construction |
| 169. | Taylor Strain Gauge Location Diagram |
| 170. | Taylor Field Testing Results |
| 171. | Taylor Run Sheets from Testing |
| 172. | Taylor Short Beam Testing |
| 173. | Taylor Long Beam Testing |
| 174. | David Jones CV |
| 175. | WITHDRAWN |
| 176. | WITHDRAWN |
| 177. | (for ID only) 25th SAMPE Conference |
| 178. | (for ID only) 28th SAMPE Conference |
| 179. | (for ID only) 23rd SAMPE Conference |
| 180. | Handwritten drawings by Jones |
| 181. | WITHDRAWN |

```
182.   WITHDRAWN
183.   WITHDRAWN
184.   Jones Handwritten calculations DJ&A 350-351
185.   Jones Handwritten calculations DJ&A 385-386
186.   Jones Handwritten calculations DJ&A 389-401
187.   ISO 12215 calculations
188.   Drawing DJ&A 402
189.   WITHDRAWN
190.   Owens Corning Product Information
191.   WITHDRAWN
192.   WITHDRAWN
193.   Undersea Photo bow ABSOLUTELY
194.   Undersea Photo bow ABSOLUTELY
195.   Haynes CV (3)
196.   WITHDRAWN
197.   Jones ISO/CD 12215 calculations
198.   Jones Handwritten RINA calculations
199.   RINA Rules - Classification Part B Hull & Stability
       (OBJECTION; The Plaintiff and Defendant MarineMax reserve
       the right to object based on relevance and date.)
200.   WITHDRAWN
201.   John Smith CV (5)
202.   WITHDRAWN
203.   Photo small sample foam core blocks(2)
204.   Photo longer sample foam core blocks(2)
205.   Undersea photo skins with foam core blocks (
206.   WITHDRAWN
207.   WITHDRAWN
208.   WITHDRAWN
209.   WITHDRAWN
210.   Lacovera Photographs (11 pp)
211.   Lacovara CV (13)
212.   MFG Research Analysis (50)
213.   WITHDRAWN
214.   Schofield SCI Test
215.   Schofield Calculations (3)
216.   WITHDRAWN
217.   Bertram drawing and Schofield notes
218.   WITHDRAWN
219.   Schofield Panel Diagram tension and compression
220.   Schofield Panel bulkhead Diagram tension and
       compression
221.   WITHDRAWN
222.   Taylor Shipping Container Float calculations
223.   Taylor hand drawing
224.   WITHDRAWN
225.   Purch Order; Mister Marine invoice DBS 990-1001
```

```
226.   Jason Milius personal property DBS 909
227.   Jaime Castantine personal property DBS 906
228.   (for ID only) Bow stuffing video
229.   (for ID only)Team Lazarra crash Demand replacement
   vessel
230.   WITHDRAWN
231.   WITHDRAWN
232.   WITHDRAWN
233.   Bertram 000003 10.0326 Sample #2(2).jpg
234.   Bertram 000003 10.0326 Sample #2(9).jpg
235.   Bertram 000003 10.0326 Sample #2(11).jpg
236.   Bertram 000003 10.0326 Sample #4(7).jpg
237.   Bertram 000003 10.0326 Sample #4(1).jpg
238.   Bertram 000003 10.0326 Sample #4(16).jpg
239.   Swimming Tour video Bertram 000001
240.   Bow video Bertram 000001
241.   WITHDRAWN
242.   Sample Collection video Bertram 000002
243.   Wreck video 11/25/09
244.   Wreck video 11/29/09
245.   WITHDRAWN
246.   WITHDRAWN
247.   WITHDRAWN
248.   WITHDRAWN
249.   WITHDRAWN
250.   WITHDRAWN
251.   WITHDRAWN
252.   WITHDRAWN
253.   WITHDRAWN
254.   WITHDRAWN
255.   WITHDRAWN
256.   WITHDRAWN
257.   WITHDRAWN
258.   WITHDRAWN
259.   WITHDRAWN
260.   WITHDRAWN
261.   WITHDRAWN
262.   WITHDRAWN
263.   WITHDRAWN
264.   WITHDRAWN
265.   WITHDRAWN
266.   WITHDRAWN
267.   WITHDRAWN
268.   WITHDRAWN
269.   WITHDRAWN
270.   WITHDRAWN
271.   WITHDRAWN
```

```
272.   WITHDRAWN
273.   WITHDRAWN
274.   WITHDRAWN
275.   Airex C70              DJ&A 348-349 (2pp)
276.   WITHDRAWN
277.   Proper Core Installation DJ&A 405-414 (10pp)
278.   Ashland              DJ&A 346-347 (2pp)
279.   Sea Trial Photo      DJ&A 263
280.   Sea Trial Photo      DJ&A 316
281.   Sea Trial Photo      DJ&A 317
282.   Sea Trial Photo      DJ&A 319
283.   Sea Trial Photo      DJ&A 320
284.   Sea Trial Photo      DJ&A 322
285.   Sea Trial Photo      DJ&A 323
286.   Sea Trial Photo      DJ&A 324
287.   Sea Trial Photo      DJ&A 326
288.   Sea Trial Photo      DJ&A 330
289.   Sea Trial Photo      DJ&A 331
290.   Sea Trial Photo      DJ&A 338
291.   Sea Trial Photo      DJ&A 340
292.   Sea Trial Photo      DJ&A 341
293.   Sea Trial Photo      DJ&A 344
294.   June 25, 2010 photo  DJ&A 169
295.   June 25, 2010 photo  DJ&A 178
296.   June 25, 2010 photo  DJ&A 180
297.   June 25, 2010 photo  DJ&A 181
298.   June 25, 2010 photo  DJ&A 184
299.   June 25, 2010 photo  DJ&A 195
300.   June 25, 2010 photo  DJ&A 196
301.   June 25, 2010 photo  DJ&A 197
302.   June 25, 2010 photo  DJ&A 199
303.   June 25, 2010 photo  DJ&A 233
304.   Sample photo         DJ&A 242
305.   Sample photo         DJ&A 243
306.   Sample photo         DJ&A 245
307.   Sample photo         DJ&A 247
308.   Sample photo         DJ&A 248
309.   Sample photo         DJ&A 249
310.   Sample photo         DJ&A 250
311.   Sample photo         DJ&A 251
312.   Sample photo         DJ&A 252
313.   Sample photo         DJ&A 253
314.   Sample photo         DJ&A 254
315.   Sample photo         DJ&A 255
316.   WITHDRAWN
317.   WITHDRAWN
318.   WITHDRAWN
```

| | | |
|---|---|---|
| 319. | WITHDRAWN | |
| 320. | Dealership Agreement | Bertram 610-640 |
| 321. | 1st Amend Dealership Agmt | MM 35-37 |
| 322. | 2nd Amend Dealership Agmt | MM 38 |
| 323. | 3rd Amend Dealership Agmt | MM 39-40 |
| 324. | MOU Expiration Dealership Agmt | Bertram 590-609 |
| 325. | MOU | MarineMax 61 |

326.    08-07-08 email with MOU draft of 08-05-08 (Bertram 1852-1857) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

327.    MOU draft of 08-15-08 (Bertram 1858-1865) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

328.    MOU draft of 08-27-08 (Bertram 1866-1873) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

329.    08-29-08 email with MOU draft of 08-29-08 (Bertram 1874-1883) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

330.    09-03-08 email with MOU draft of 09-03-08 (Bertram 1884-1894) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

331.    09-04-08 email with executed MOU draft of 09-04-08 (Bertram 1895-1916)

332.    Email exchange of 11-03-08, 11-05-08 and 11-10-08 (Bertram 1314-1322) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

333.    Email exchange of 15-05-08 (Bertram 1340-1347) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

334.    Email exchange of 1-30-09(Bertram 1432 and 1917) (OBJECTION; The Defendant MarineMax objects based the parol evidence rule.)

335.    Quality Report of 07-28-05 (Bertram 93-95)

336.    Straight Bill of Lading (Bertram 98)

337.    Slakoff, Cramer & Associates Survey Report (Bertram 144-152)

338.    Email exchange between Bertram and RINA (Bertram 1847-1851) ((OBJECTION; The Plaintiff and Defendant MarineMax reserve their right to objects based hearsay and late production.)

339.    Three photos of exemplar panel layup (Bertram 1918)

340.    Photo C4039-003 from DRE Exemplar Vessel Testing dated 4/14/11

341.    Photo C4039-055 from DRE Exemplar Vessel Inspection dated 2/10/10

342. Photo C4039-003 from DRE Exemplar Vessel Testing dated 4/14/11
343. Photo C4039-015 from DRE Factory Inspection dated 1/25/11
344. Photo C4039-017 from DRE Factory Inspection dated 1/25/11
345. Photos C4039-021,C4039-060 and C4039-059 from DRE Exemplar Vessel Inspection dated 2/10/10
346. Photo C4039-012 from DRE Exemplar Vessel Inspection dated 2/10/10
347. Photos C4039-020 and C4039-058 from DRE Exemplar Vessel Inspection dated 2/10/10
348. Photos C4039-028 and C4039-057 from DRE Exemplar Vessel Inspection dated 2/10/10
349. Photo C4039-028 from DRE Exemplar Vessel Testing dated 4/14/11
350. Photos C4039-027 and C4039-040 from DRE Exemplar Vessel Testing dated 4/14/11
351. Photo C4039-022 from DRE Exemplar Vessel Testing dated 4/14/11
352. Photo C4039-017 from DRE Exemplar Vessel Testing dated 4/14/11
353. Photo C4039-131 from DRE Parts Inspection dated 3/7/11
354. Photo C4039-133 from DRE Parts Inspection dated 3/7/11
355. Photo C4039-134 from DRE Parts Inspection dated 3/7/11
356. Photo C4039-145 from DRE Parts Inspection dated 3/7/11
357. Photo C4039-175 from DRE Parts Inspection dated 3/7/11
358. Photo C4039-054 from DRE Factory Inspection dated 1/25/11
359. (for ID only)Photos of falling shipping containers produced in "References" tab of DRE Documentation material provided for Taylor deposition on 12/14/11
360. (for ID only)Photos of floating shipping containers produced in "References" tab of DRE Documentation material provided for Taylor deposition on 12/14/11
361. Videotape of April 14, 2011 Exemplar Testing
362-399 numbers unused
400. Photos - DHEVA dive SMITH Pix 2-12-10. DSCN 3030 through DSCN 3171 (JS_000005)
401. Photos - DHEVA 8-15-11. IMG 1672 through IMG 1710 (JS_000004\DHEVA - 8-15-11\100___06)
402. Work Order 202747 - MM_000191-192)
403. Work order 202747 detail (MM_001694-1698)

```
   404.     Work Order 217975 (MM_000198-200)
   405.     Email string re WO# 208414 (Bertram_000337)
   406.     Fax re warranty claim and invoice (Bertram_000110-111)
   407.     Robert Schofield CV
408-500 numbers unused
501. Email concerning warranty card (MM_001582-6)(5pp)
502. (for ID only)Photo Boat under construction
503. John Smith photograph of hull to deck PICT0663
504. John Smith photograph of hull to deck PICT0664
505. John Smith photograph of hull to deck PICT0694
506. John Smith photograph of hull to deck PICT0698
507. John Smith photograph of hull to deck PICT0699
508. John Smith photograph of hull to deck PICT0700
509. USCG documentation TROPICAT
510. June 25, 2010 photo        DJ&A 171
511. June 25, 2010 photo        DJ&A 177
512. June 25, 2010 photo        DJ&A 185
513. June 25, 2010 photo        DJ&A 189
514. June 25, 2010 photo        DJ&A 191
515. June 25, 2010 photo        DJ&A 192
516. June 25, 2010 photo        DJ&A 198
517. June 25, 2010 photo        DJ&A 202
518. June 25, 2010 photo        DJ&A 203
519. June 25, 2010 photo        DJ&A 206
520. June 25, 2010 photo        DJ&A 218
521. June 25, 2010 photo        DJ&A 226
522. June 25, 2010 photo        DJ&A 231
523. June 25, 2010 photo        DJ&A 237
524. Sea Trial photo        DJ&A 318
525. Sea Trial photo        DJ&A 327
526. Sea Trial photo        DJ&A 334
527. Sea Trial photo        DJ&A 336
528. (for ID only)Loss of Other Property
529. (for ID only)Environmental Mitigation Costs
530. Settlement Ocean Freight
531. Still Photo 11/29/09 IMAG 0980.JPG
```

**(O)** Attached to the pretrial brief should be counsel's request for
voir dire questions (*see* Local Civil Rule 47.04) and request for jury
instructions. Copies of the requests for voir dire questions and jury
instructions shall be served on opposing counsel. If the requests for
voir dire and jury instructions are not submitted seven (7) days prior
to the selection of the jury, counsel shall be deemed to have waived
the right to submit voir dire questions and jury instructions, unless
made necessary by events at trial.

        Not applicable.

It is understood that absent order to the contrary, the information required by Local Civil Rule 26.05(A)-(M) is for the sole use of the Court and will not be furnished to opposing counsel without consent of counsel. Therefore, these portions of the trial brief ((A)-(M)) are not served absent order to the contrary. Information contained in (N) and (O) shall be served on opposing parties.

Proposed findings and conclusions should not be submitted with the pretrial brief unless requested by the Court.

RESPECTFULLY SUBMITTED:

JOHN HUGHES COOPER, P.C.

By: /s/John Hughes Cooper
JOHN HUGHES COOPER, ESQUIRE
    Federal Court ID 298
    South Carolina Bar 1387
    State Bar of Georgia 185986
JOHN TOWNSEND COOPER, ESQUIRE
    Federal Court ID 10172
    South Carolina Bar 76087
1808 Middle Street
Post Office Box 395
Sullivan's Island, SC 29482
843-883-9099; fax 843-883-9335
shiplaw@jhcooper.com
jtc@jhcooper.com

and

CAIN DENNY, ESQUIRE
CAIN DENNY, P.A.
    Federal Court ID 7383
    South Carolina Bar 13590
P.O. Box 1205
Charleston, S.C. 29402
843-965-5400
Cain.denny@gmail.com

ATTORNEYS FOR PLAINTIFFS,
DHEVATARA BEACH SEYCHELLES, LTD.
And NEIL HELLIWELL

March 26, 2012
Mt. Pleasant, South Carolina